**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEVIN P. MCCORMICK, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT 1:17-cv-05544 |
| SETERUS, INC. and SHELLPOINT MORTGAGE SERVICING, | JURY TRIAL DEMANDED |
| Defendants. | |

**COMPLAINT**

NOW COMES the Plaintiff, KEVIN P. MCCORMICK, by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendants, SETERUS, INC. and SHELLPOINT MORTGAGE SERVICING, as follows:

**Nature of the Action**

1.      This is an action brought by a consumer seeking redress for violation(s) of the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the bankruptcy discharge injunction.

**Jurisdiction and Venue**

2.      Subject matter jurisdiction exists over the Telephone Consumer Protection Act claim(s) under 28 U.S.C. §§ 1331 and 1337.

3.      Subject matter jurisdiction exists over the violation of the bankruptcy discharge injunction claim(s) under 28 U.S.C. § 1334.

4.      Supplemental jurisdiction exists over the Illinois Consumer Fraud and Deceptive Business Practices Act claim(s) under 28 U.S.C. § 1367.

1

5.     Venue is proper under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims took place in the Northern District of Illinois.

**Parties**

6.     KEVIN P. MCCORMICK ("McCormick") is a natural person, over 18-years-of-age, who at all times relevant resided at the property commonly known as 1396 Bow String Court, Carol Stream, Illinois 60188.

7.     SETERUS, INC. ("Seterus") is a foreign corporation formed under the laws of the State of Delaware.  Seterus has a principal place of business located at 14523 SW Millikan Way, Beaverton, Oregon 97005.  Seterus provides mortgage loan servicing for nondepository credit institution clients investing in portfolios of non-performing, re-performing and sub-performing residential mortgage loans.  Seterus operates as a subsidiary of International Business Machines Corporation.

8.     SHELLPOINT MORTGAGE SERVICING ("Shellpoint") is a foreign limited liability company formed under the laws of the State of Delaware.  Shellpoint has a principal place of business located at 55 Beattie Place, Suite 100, Greenville, South Carolina 29601.  Shellpoint provides mortgage loan servicing for institutional clients investing in portfolios of non-performing, re-performing and sub-performing residential mortgage loans.  Shellpoint provides loan servicing for Super Prime Jumbo clients and for newly issued conforming and government prime mortgage loans for its parent company New Penn Financial.

**Factual Allegations**

9.      On January 20, 2012, McCormick executed a mortgage in favor of Compass Mortgage, Inc. to secure a note in the amount of $155,000.00.

10.     Subsequently, the servicing of McCormick's mortgage loan was transferred to JPMorgan Chase Bank, N.A. ("Chase").

11.     On May 1, 2015, having suffered financial hardship, McCormick defaulted on his mortgage payments.

12.     On May 29, 2015, a bankruptcy case concerning McCormick was filed under Chapter 13 of the Bankruptcy Code.[1]

13.     The schedules filed by McCormick listed Chase on Schedule D - Creditors Holding Secured Claims.

14.     As a result, on June 1, 2015 notice by first class mail was sent to Chase by the Bankruptcy Noticing Center.

15.     On July 7, 2016, Chase sent McCormick a written communication advising that the servicing of his mortgage loan was transferred to Seterus, effective July 1, 2016.

**The servicing of McCormick's mortgage
loan is transferred from Chase to Seterus**

16.     On July 14, 2016, a discharge under 11 U.S.C. § 1328(a) was granted to McCormick – removing McCormick's personal liability on the mortgage loan.

17.     Notwithstanding, Seterus initiated a telephone harassment campaign, placing collection calls to McCormick no less than 1-2 times per month.

---

[1] Case No. 1:15-bk-19002 (*In re Kevin Patrick McCormick*)

3

18.     McCormick answered and demanded that Seterus cease placing calls to him, and informed them of his bankruptcy discharge.

19.     Notwithstanding, Seterus placed no less than 22 calls to McCormick's cellular telephone from July 2016 to May 2017.

20.     More than once, McCormick has answered and observed a brief pause at the outset of the call before being connected to a live agent.

21.     Moreover, McCormick made multiple and numerous demands that Seterus cease placing calls to him due to his bankruptcy discharge.

22.     McCormick is informed and believes that Seterus obtained his cellular telephone number of XXX-XXX-7038 from McCormick's mortgage application.

23.     On July 15, 2016, Seterus sent McCormick an Account Statement, with a payment coupon attached, which provided that the "Total Amount Due" was $21,238.62 and the "Payment Due Date" was August 1, 2016.

24.     On September 13, 2016, Seterus sent McCormick an Account Statement, with a payment coupon attached, which provided that the "Total Amount Due" was $23,984.82 and the "Payment Due Date" was October 1, 2016.

25.     On May 9, 2017, Seterus sent McCormick a written communication advising that the servicing of his mortgage loan was being transferred to Shellpoint, effective June 1, 2017.

**The servicing of McCormick's mortgage
loan is transferred from Seterus to Shellpoint**

26.     Immediately, Shellpoint initiated a relentless telephone harassment campaign, placing collection calls to McCormick no less than 4-5 times per week.

27. McCormick answered and demanded that Shellpoint cease placing calls to him, and informed them of his bankruptcy discharge.

28. Notwithstanding, Shellpoint placed no less than 36 calls to McCormick's cellular telephone from June 2017 to present-day.

29. More than once, McCormick has answered and observed a brief pause at the outset of the call before being connected to a live agent.

30. Moreover, McCormick made multiple and numerous demands that Shellpoint cease placing calls to him due to his bankruptcy discharge.

31. McCormick is informed and believes that Shellpoint obtained his cellular telephone number of XXX-XXX-7038 from McCormick's mortgage application.

32. At all times relevant, McCormick was the sole operator, possessor and subscriber of the cellular telephone number of XXX-XXX-7038.

33. At all times relevant, McCormick was personally financially responsible for his cellular telephone equipment and services.

**DAMAGES**

34. Seterus and Shellpoint's acts and omissions have resulted in severe injury to Plaintiffs. Specifically, Seterus and Shellpoint's acts and omissions have resulted in:

    a. Diminished battery capacity;

    b. Diminished data space;

    c. Emotional distress (aggravation, frustration);

    d. Inconvenience;

    e. Increased usage of cellular services; and

    f. Increased usage of electricity.

**Count I – Seterus's Violation(s) of
the Telephone Consumer Protection Act**

35. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

36. McCormick believes that all calls placed to his cellular telephone utilized an automatic telephone dialing system, as defined by 47 U.S.C. § 227(a)(1).[2]

37. McCormick believes that all calls placed to his cellular telephone utilized a predictive dialer.[3][4]

38. McCormick believes that the predictive dialer utilized dials a list of telephone numbers and connects answered dials to agents – based upon the brief pause at the outset of the call.

39. All calls placed to McCormick's cellular telephone were not made for emergency purposes or placed with prior express consent of McCormick.

40. Seterus violated the Telephone Consumer Protection act by placing no less than 30 calls to McCormick's cellular telephone from July 2016 to May 2017 utilizing an automatic telephone dialing system without McCormick's express consent.

---

[2] An automatic telephone dialing system means equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such number.

[3] "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

[4] "When evaluating the issue whether equipment is an automatic telephone dialing system, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.' Accordingly, a system need not actually, store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).

41.     As provided above, on multiple and numerous occasions, McCormick answered and renewed his demand that Seterus cease placing calls to him, and informed them of his bankruptcy discharge.

42.     The foregoing acts and omissions of Seterus constitute multiple and numerous violations of the Telephone Consumer Protection Act, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227 *et seq*.

43.     As provided above, Seterus's acts and omissions resulted in severe injury to McCormick.

44.     As a result of Seterus's violations of 47 U.S.C. 227(b)(1), McCormick is entitled to $500.00 in damages, for each and every violation.

45.     As a result of Seterus's *knowing and willful violations* of 47 U.S.C. 227(b)(1), McCormick is entitled to $1,500.00 in treble damages, for each and every violation.

WHEREFORE, McCormick requests the following relief:

a.      find that Seterus violated 47 U.S.C. § 227(b)(1);

b.      award statutory damages of at least $500.00, and treble damages of $1,500.00, for each and every violation; and,

c.      grant any other relief deemed appropriate and equitable.

**Count II – Shellpoint's Violation(s) of the
Telephone Consumer Protection Act – 47 U.S.C. § 227**

46.     All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

47.     McCormick believes that all calls placed to his cellular telephone utilized an automatic telephone dialing system, as defined by 47 U.S.C. § 227(a)(1).

48.   McCormick believes that all calls placed to his cellular telephone utilized a predictive dialer.

49.   McCormick believes that the predictive dialer utilized dials a list of telephone numbers and connects answered dials to agents – based upon the brief pause at the outset of the call.

50.   All calls placed to McCormick's cellular telephone were not made for emergency purposes or placed with prior express consent of McCormick.

51.   Shellpoint violated the Telephone Consumer Protection act by placing no less than 30 calls to McCormick's cellular telephone from June 2017 to present-day utilizing an automatic telephone dialing system without McCormick's express consent.

52.   As provided above, on multiple and numerous occasions, McCormick answered and renewed his demand that Shellpoint cease placing calls to him, and informed them of his bankruptcy discharge.

53.   The foregoing acts and omissions of Shellpoint constitute multiple and numerous violations of the Telephone Consumer Protection Act, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227 *et seq*.

54.   As provided above, Shellpoint's acts and omissions resulted in severe injury to McCormick.

55.   As a result of Shellpoint's violations of 47 U.S.C. 227(b)(1), McCormick is entitled to $500.00 in damages, for each and every violation.

56.   As a result of Shellpoint's *knowing and willful violations* of 47 U.S.C. 227(b)(1), McCormick is entitled to $1,500.00 in treble damages, for each and every violation.

WHEREFORE, McCormick requests the following relief:

a.   find that Shellpoint violated 47 U.S.C. § 227(b)(1);

b.    award statutory damages of at least $500.00, and treble damages of $1,500.00, for each and every violation; and,

c.    grant any other relief deemed appropriate and equitable.

## Count III – Seterus's Violation(s)
## of the Discharge Injunction – 11 U.S.C. 524

57.    All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

58.    The principal purpose of the United States Bankruptcy Code is to grant a "fresh start" to the "honest but unfortunate debtor."[5]

59.    The bankruptcy discharge injunction is central to the relief afforded by the Bankruptcy Code.

60.    A discharge order operates as, among other things, an injunction against the commencement or continuation of any act to collect, recover, or offset any debt to which it applies – in this case, any prepetition debt – as a personal liability of the debtor.  11 U.S.C. § 524(a)(2).

61.    Lest there be any doubt or confusion about its import, the discharge order that the Bankruptcy Court entered in this case and sent to all creditors, including Seterus's predecessor, expressly provided: "This order means that no one may make any attempt to collect a discharged debt from the debtors personally."

62.    The purpose of the permanent injunction set forth at § 524(a)(2) and reiterated in the discharge order is to effectuate one of the primary purposes of the Bankruptcy Code

---

[5] *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007).

63. Accordingly, Congress designed and intended the permanent injunction "to give complete effect to the discharge," "to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts," and "to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it." S. Rep. No. 989, 95th Cong., 2d Sess. 80-811 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787; H.R. Rep. No. 595, 95th Cong., 1st Sess. 365-3655 (1977).

64. A creditor willfully violates the discharge injunction if the creditor (1) knew that the discharge injunction was invoked, and (2) intended the actions which violated the injunction.

65. If the court finds that the creditor received notice of the discharge in bankruptcy, then the debtor will have to prove only that the creditor intended the actions which violated the injunction.

66. McCormick is informed and believes that upon loan boarding, Seterus received actual notice and knowledge that on July 14, 2016, a discharge under 11 U.S.C. § 1328(a) was granted to McCormick.

67. Accordingly, Seterus's attempt(s) to collect a discharged debt from McCormick personally constituted a willful violation of the discharge injunction.

WHEREFORE, McCormick request the following relief:

a.      find that Seterus violated 11 U.S.C. § 524;

b.      award actual, and punitive damages, and costs of this action including expenses together with attorneys' fees as determined by this Court; and

c.      award any other relief deemed appropriate and equitable.

## Count IV – Shellpoint's Violation(s)
## of the Discharge Injunction – 11 U.S.C. 524

68.    All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

69.    The principal purpose of the United States Bankruptcy Code is to grant a "fresh start" to the "honest but unfortunate debtor."[6]

70.    The bankruptcy discharge injunction is central to the relief afforded by the Bankruptcy Code.

71.    A discharge order operates as, among other things, an injunction against the commencement or continuation of any act to collect, recover, or offset any debt to which it applies – in this case, any prepetition debt – as a personal liability of the debtor.  11 U.S.C. § 524(a)(2).

72.    Lest there be any doubt or confusion about its import, the discharge order that the Bankruptcy Court entered in this case and sent to all creditors, including Shellpoint's predecessor, expressly provided: "This order means that no one may make any attempt to collect a discharged debt from the debtors personally."

73.    The purpose of the permanent injunction set forth at § 524(a)(2) and reiterated in the discharge order is to effectuate one of the primary purposes of the Bankruptcy Code

74.    Accordingly, Congress designed and intended the permanent injunction "to give complete effect to the discharge," "to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts," and "to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it."  S. Rep. No. 989, 95th Cong., 2d

_____

[6] *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007).

Sess. 80-811 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787; H.R. Rep. No. 595, 95th Cong., 1st Sess. 365-3655 (1977).

75. A creditor willfully violates the discharge injunction if the creditor (1) knew that the discharge injunction was invoked, and (2) intended the actions which violated the injunction.

76. If the court finds that the creditor received notice of the discharge in bankruptcy, then the debtor will have to prove only that the creditor intended the actions which violated the injunction.

77. McCormick is informed and believes that upon loan boarding, Shellpoint received actual notice and knowledge that on July 14, 2016, a discharge under 11 U.S.C. § 1328(a) was granted to McCormick.

78. Accordingly, Shellpoint's attempt(s) to collect a discharged debt from McCormick personally constituted a willful violation of the discharge injunction.

WHEREFORE, McCormick request the following relief:

a. find that Shellpoint violated 11 U.S.C. § 524;

b. award actual, and punitive damages, and costs of this action including expenses together with attorneys' fees as determined by this Court; and

c. award any other relief deemed appropriate and equitable.

**Count V – Seterus's Violation(s) of the**
**Illinois Consumer Fraud and Deceptive Business Practices Act**

79. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

80. McCormick is a "person" as defined by 815 ILCS § 505/1(c).

81. McCormick is a "consumer" as defined by 815 ILCS § 505/1(e).

12

82. Seterus is engaged in "commerce" as defined by 815 ILCS § 505/1(f).

83. It was immoral, oppressive, unethical, unfair and unscrupulous – and against public policy – for Seterus to place no less than 22 calls to McCormick notwithstanding his revocation of consent to be contacted by Seterus.

84. Seterus's unfair actions violate public policy and shed light on an industry where business decisions are driven by profit, with complete disregard for consumers.

85. As provided above, Seterus's unfair acts and omissions resulted in severe injury to McCormick.

86. An award of punitive damages is appropriate as Seterus's unfair acts and omissions were outrageous, wanton and willful.

87. An award of punitive damages is appropriate as Seterus showed a conscious disregard and indifference for the rights of McCormick, and consumers generally.

WHEREFORE, McCormick requests the following relief:

a. find that Seterus's unfair acts and omissions violate the Illinois Consumer Fraud and Deceptive Business Practices Act;

b. award actual, and punitive damages, and costs of this action including expenses together with attorney's fees as determined by this Court; and

c. grant any other relief deemed appropriate and equitable.

**Count VI – Shellpoint's Violation(s) of the**
**Illinois Consumer Fraud and Deceptive Business Practices Act**

88. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

89. McCormick is a "person" as defined by 815 ILCS § 505/1(c).

90. McCormick is a "consumer" as defined by 815 ILCS § 505/1(e).

13

91.     Shellpoint is engaged in "commerce" as defined by 815 ILCS § 505/1(f).

92.     It was immoral, oppressive, unethical, unfair and unscrupulous – and against public policy – for Shellpoint to place no less than 36 calls to McCormick notwithstanding his revocation of consent to be contacted by Shellpoint.

93.     Shellpoint's unfair actions violate public policy and shed light on an industry where business decisions are driven by profit, with complete disregard for consumers.

94.     As provided above, Shellpoint's unfair acts and omissions resulted in severe injury to McCormick.

95.     An award of punitive damages is appropriate as Shellpoint's unfair acts and omissions were outrageous, wanton and willful.

96.     An award of punitive damages is appropriate as Shellpoint showed a conscious disregard and indifference for the rights of McCormick, and consumers generally.

WHEREFORE, McCormick requests the following relief:

a.      find that Shellpoint's unfair acts and omissions violate the Illinois Consumer Fraud and Deceptive Business Practices Act;

b.      award actual, and punitive damages, and costs of this action including expenses together with attorney's fees as determined by this Court; and

c.      grant any other relief deemed appropriate and equitable.

**Plaintiff demands trial by jury.**

July 28, 2017                                                                    Respectfully submitted,

                                                                                */s/ Joseph Scott Davidson*

                                                                                Joseph Scott Davidson
                                                                                SULAIMAN LAW GROUP, LTD.
                                                                                2500 South Highland Avenue

14

Suite 200
Lombard, Illinois 60148
+1 630-575-8181
jdavidson@sulaimanlaw.com

*Counsel for Kevin P. McCormick*